# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Staff Sergeant RAY A. VAZQUEZ
## United States Air Force

## ACM 37563 (rem)

## ____ M.J. ____

## 15 May 2014

Sentence adjudged 8 June 2009 by GCM convened at Misawa Air Base, Japan. Military Judge: Mark L. Allred.

Approved Sentence: Dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Major Nathan A. White and William E. Cassara, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Scott C. Jansen; Major Tyson D. Kindness: and Gerald R. Bruce, Esquire.

Before

HARNEY, MARKSTEINER, and MITCHELL
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final publication.

MITCHELL, Judge:

Contrary to his pleas, the appellant was convicted of one specification of aggravated sexual contact with a child under the age of 12, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence consisted of a dishonorable discharge, 8 years of confinement, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

This case was originally docketed before this Court with three assignments of error. We specified three additional issues concerning whether the appellant's due process rights were violated when the testimony of the majority of the Government's witnesses, to include the purported victim, AM, was read to two of the court-martial panel members in accordance with Rule for Courts-Martial (R.C.M.) 805(d)(1), while the other four members were able to observe the in-court demeanor of the same witnesses. We heard oral argument on two of the assigned errors in October 2011. On 19 March 2012, we concluded the appellant's right to military due process was violated and set aside the findings and sentence. *United States v. Vasquez*, 71 M.J. 513 (A.F. Ct. Crim. App. 2012), *superseded by United States v. Vazquez*, 71 M.J. 543 (A.F. Ct. Crim. App. 2012). After granting the appellee's request for reconsideration[1] we again dismissed the charge and set aside the findings and sentence. *United States v. Vazquez*, 71 M.J. 543 (A.F. Ct. Crim. App. 2012), *reversed and remanded by United States v. Vazquez*, 72 M.J. 13 (C.A.A.F. 2013). Our superior court granted review and determined that the appellant failed to show (1) that Article 29(b), UCMJ, 10 U.S.C. § 829(b), and R.C.M 805(d)(1) were unconstitutional as applied to him, and (2) that the military judge abused his discretion in following that procedure, and reversed our decision and remanded the case to this Court. *United States v. Vasquez*, 72 M.J. 13 (C.A.A.F. 2013).

Upon remand, the appellant alleges the original three errors: (1) whether the appellant was denied his Sixth Amendment[2] right to confrontation when the military judge admitted the victim's statements to her mother as residual hearsay; (2) whether the military judge abused his discretion when he admitted the victim's statement to Dr. MH pursuant to Mil. R. Evid. 803(4); and (3) whether the evidence is legally and factually sufficient to support the finding of guilty for aggravated sexual contact with a child. Finding no error materially prejudicial to the appellant, we affirm the findings and sentence.

*Background*

AM was the 4-year-old daughter of Staff Sergeant (SSgt) DG and step-daughter of Petty Officer Second Class (PO2) UG. PO2 UG and the appellant were roommates for the 10 months before PO2 married SSgt DG. SSgt DG and PO2 UG considered the appellant part of their family. The trio had dinner together several nights each week and often spent the night at each other's homes. AM referred to the appellant as "Uncle Ray."

Approximately two weeks before the appellant deployed to Iraq, he mentioned to PO2 UG that he would like to spend time with AM. He did not request a specific day or

---

[1] We denied the Government's Motion for Reconsideration En Banc, but granted panel reconsideration.
[2] U.S. CONST. amend VI.

time to meet with her. Neither SSgt DG nor PO2 UG voiced any concerns or reservations about the request. On 18 September 2008, without prior coordination, PO2 UG brought AM to the appellant's house to visit. The appellant took AM to a local McDonalds. PO2 UG returned to the appellant's house approximately an hour later. He testified that he observed the appellant and AM in the living room. AM was sitting on the couch in her clothes and appeared to be half-asleep.

On 28 September 2008, while SSgt DG was driving, AM stated, "Mommy, Uncle Ray made me lick her [sic] body."[3] When they arrived home, SSgt DG questioned AM about what happened and then called PO2 UG to inform him of the allegation. They agreed to do nothing until PO2 UG returned from his temporary duty location.

On 3 October 2008, SSgt DG reported the allegation to the Family Advocacy Office who then referred SSgt DG to the emergency room at the Urgent Care Clinic (UCC). On the way to the UCC, SSgt DG told AM they were going to the hospital "for the doctor to make sure she was okay." At the UCC, AM was seen by the on-call pediatrician, Dr. MH, for suspected abuse. Dr. MH introduced himself to SSgt DG and AM. He testified that he explained his role to them:

> I am a kid doctor and I am a pediatrician. Of course I explain it appropriately. I'd also be sure to tell them who I'm not; which is to say I'm not OSI or Security Forces or there in a role as a detective, but to administer a physical exam, obtain a history and physical exam for medical purposes.

Dr. MH explained that the history and physical exam are for diagnostic and treatment purposes, and to determine if additional tests or medications are necessary. Dr. MH's primary purpose was to treat the patient, AM. Dr. MH asked AM open-ended questions as this encouraged the patient to communicate. Dr. MH thoroughly examined AM, looking for signs of abuse. As he examined her, Dr. MH asked AM if anyone had ever touched her private area, to which she stated, "Uncle Ray." When he asked her where Uncle Ray touched her, AM pointed to her groin. Using a doll, Dr. MH asked AM to show him where she was touched. AM pointed to the doll's groin area. Dr. MH further asked AM if Uncle Ray had asked her to do something, and AM stated, "he told me to bite her," and when asked who "her" was, AM stated "Uncle Ray."

After Dr. MH conducted the physical exam, he spoke to AM again while SSgt DG was out of the room. He began the second interview by re-introducing himself, telling AM she was not in trouble, and telling her he wanted to ensure the information he had was correct. Dr. MH explained that he conducts the second interview to see if the parent is influencing the child and also to see if the child identifies that the now-absent parent

---

[3] Testimony at trial revealed that AM often confused pronouns.

was abusing the child. He explained that he viewed this as part of treatment as it would inform his decision on disposition of the patient. Although he was aware that he was evaluating AM based on a report of suspected child abuse, he did not speak to any law enforcement agents until after he completed the physical examination.

The matter was investigated by the local Air Force Office of Special Investigations (AFOSI). AFOSI special agents arranged a pretext phone call between PO2 UG and the appellant. PO2 UG called the appellant in Iraq, and spoke with him for approximately 15-17 minutes while AFOSI special agents monitored the conversation. PO2 UG asked the appellant if he had ever touched AM. The appellant adamantly denied the allegation. However, the appellant offered that he had bathed or showered with AM on one occasion. PO2 UG was not aware of any time that the appellant had bathed with AM. The only instance he knew of was during a 4th of July celebration when he and the appellant took AM into the bathroom to rinse firework residue off her face. During that occasion, the appellant did not touch AM at all, and everyone was fully clothed.

The appellant was subsequently charged with aggravated sexual contact with a child, in violation of Article 120, UCMJ. Prior to the members being seated, the Government requested that AM be permitted to testify remotely in accordance with Mil. R. Evid. 611. In support of the motion, a forensic psychiatrist, Dr. Benedek, testified that she believed AM would suffer emotional trauma if required to testify in the appellant's presence. The military judge found that the requirements of Mil. R. Evid. 611(d)(3)(B) were met and permitted AM to testify in a separate room via closed-circuit TV in accordance with R.C.M. 914(a). AM was not sworn as an adult witness, but instead agreed that she knew it was important to tell the truth, that she knew the difference between the truth and a lie, and promised to tell the truth. The military judge, members, counsel, and the accused were able to observe AM while she testified.

The salient portions of AM's testimony were:

- That "Uncle Ray" told her to "lick his body."

- When asked what the appellant's body looked like, AM stated, "nasty," and then drew what she described as an "oval."

- When asked by trial counsel what her scariest day was, she replied, "I fell down." Asked what her saddest day was, she replied, "Making crafts. I made crafts at school."

- When asked if the appellant asked her to do anything, she replied, "He just told me to lick his body."

On cross-examination, trial defense counsel's only question was whether AM remembered him, to which she replied, "yes."

*Sixth Amendment Confrontation Clause and Child Witnesses*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has identified three purposes of confrontation: (1) to ensure the witness's statements are given under oath; (2) to require the witnesses to be available for cross-examination; and (3) to permit the finder of fact to observe the demeanor of the witness. *California v. Green*, 399 U.S. 149, 158 (1970). The Supreme Court clarified that the Confrontation Clause requires only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *United States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in original) (citations and quotation marks omitted). In *Owens*, the victim made a prior statement identifying the appellant as the one who attacked him, but at trial could not recall actually seeing him during the assault. The Confrontation Clause was satisfied when "the [appellant] ha[d] the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination) the very fact that he has a bad memory." *Id.* (internal citation omitted). When hearsay evidence is admitted, the Confrontation Clause is satisfied when "the hearsay declarant is present at trial and subject to unrestricted cross-examination." *Id*. at 560. A witness is "'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *Id.* at 561.

The Supreme Court later re-affirmed that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraint at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004). Our superior court has explicitly held that *Crawford* did not overrule *Owens*. *United States v. Rhodes*, 61 M.J. 445, 450 (C.A.A.F. 2005).

Military case law on the application of the Confrontation Clause as it applies to child witnesses in cases of alleged abuse is limited. The Army Court of Criminal Appeals accepted a trial judge's determination that a child witness who appeared in court, testified that she knew a witness, and had told that witness about the "sex game" her father (the appellant) played with her, was nonetheless not present for Confrontation Clause purposes when she cried on the stand and refused to answer more specific questions about the incident. *United States v. Russell*, 66 M.J. 597 (Army Ct. Crim. App. 2008). After the child witness had trouble testifying, the military judge took a recess. After the recess, the child witness was recalled but stated she was scared and refused to answer any more questions. The child witness was called again later in the proceeding and for the third time refused to answer questions. That court reasoned that although she

appeared in the courtroom, she was too young and too frightened to be subject to a thorough direct or cross-examination. *Id.* Similarly, the Navy-Marine Court of Criminal Appeals found a child who immediately began to cry when she entered the courtroom and did not testify, was not present for Confrontation Clause purposes. *United States v. Sparks*, 2011 WL 666858 (N.M. Ct. Crim. App. 2011) (unpub. op.).

The federal circuits have examined similar cases and determined that the Confrontation Clause was satisfied when a child witness testified even when the child witness failed to remember or testify about the alleged events. The Confrontation Clause "is satisfied when the hearsay declarant, here the alleged child victims, actually appear in court and testify in person." *United States v. Spotted War Bonnet*, 933 F.2d 1471, 1473 (8th Cir. 1991), *cert. denied* 502 U.S. 1101 (1992). However, the court went on to explain:

> [S]imply putting a child on the stand, regardless of her mental maturity, is not sufficient to eliminate all Confrontation Clause concerns. If, for example, a child is so young that she cannot be cross-examined at all, or if she is simply too young and too frightened to be subjected to a thorough direct or cross-examination[,] the fact that she is physically present in the courtroom should not, in and of itself, satisfy the demands of the Clause.

*Id.* at 1474 (alteration in the original) (citation and internal quotation marks omitted). In *United States v. McHorse*, 179 F.3d 889 (10th Cir. 1999), the prosecution admitted statements made by a then 4-year-old child to her family doctor and therapist. The trial was three years later, and her trial testimony consisted of her answering "yeah" when asked if the defendant ever did anything to her, but she could not recall what the defendant did. *Id.* at 895. Trial defense counsel did not cross-examine her. The Tenth Circuit concluded that the defendant had the opportunity to reveal weakness in her testimony to include using her lack of memory to attack her credibility. *Id.* at 900. The court pointed out that her testimony was "minimally, if at all harmful" to the accused so trial defense counsel made a strategic decision not to cross-examine her as that may have resulted in testimony from her that was more damaging. *Id.* The court concluded that the child witness's "failure to recall the alleged incidents of sexual abuse against her coupled with Defendant's strategy choice not to cross-examine her regarding her lack of memory did not violate Defendant's rights under the Confrontation Clause." *Id.* Similarly, in *Yanez v. Minnesota*, 562 F.3d 958 (8th Cir. 2009), the child victim's testimony was vague, and she could not remember what the defendant did or the specifics of what she told anyone previously, other than she told them something about the defendant and she told the truth. The only specific information developed during the testimony was that the defendant laid in bed with her, but she did not recall what he did or how often he was in bed with her. *Id.* at 961. The court concluded that the Confrontation Clause was satisfied since the child witness "took the oath, took the stand and was subject to questioning." *Id.* at 963.

The facts in this case, however, are that AM appeared in the courtroom and answered the questions posed to her by trial counsel. Although there were a few questions where she did not answer immediately, trial counsel followed up with other related questions that AM did answer. Trial defense counsel chose to ask AM only one question on cross-examination. There is no evidence that AM refused to answer any additional questions. We disagree with the military judge's determination that AM was not present as required by *Crawford*.

We conclude that AM was present for trial and was subject to cross-examination. She took the stand, took the oath in a fashion appropriate for children, and was subject to questioning. She did not refuse to answer questions, cry so hard she was unable to answer, or otherwise make herself "not present." *See Russell*, 66 M.J. at 597; *Sparks*, unpub. op. at 2. Similar to the defense counsel in *McHorse*, trial defense counsel chose to limit their cross-examination of the child witness. The Confrontation Clause's guarantee of the *opportunity* for cross-examination was met; trial defense counsel was free to decide how to best use that opportunity.

We recognize there was a cumulative confluence of events in this court-martial that implicated the Confrontation Clause. AM testified remotely, even though the Confrontation Clause has a preference for in person confrontation at trial. *See United States v. Pack*, 65 M.J. 381 (C.A.A.F. 2007); *United States v. McCollum*, 58 M.J. 323 (C.A.A.F. 2003). As explained above, AM's remote testimony was limited in scope but sufficient in presence to satisfy the Confrontation Clause. AM's limited remote testimony was viewed by most, but not all, of the court members who made the factual determination as to the appellant's guilt. Two replacement members were added to the panel after five of the six Government witnesses testified. Those five witnesses, to include AM, testified before four of the members; two of the members were read the transcripts of the previous testimony. As our superior court explained in an earlier opinion on this case: because AM and "each witness testified under oath in the presence of the accused and four of the final panel members [and the appellant] had the opportunity to cross-examine each witness," the Confrontation Clause was satisfied. *Vasquez*, 72 M.J. at 20. Despite these cumulative piecemeal erosions of the Confrontation Clause, we conclude that the constitutional requirement was met.

Once the Confrontation Clause is met, testimonial and nontestimonial evidence is treated the same, and we determine if it was admissible subject only to the rules of evidence. *United States v. Cucuzzella*, 66 M.J. 57, 62 (C.A.A.F. 2008) (Stucky J., concurring).

The appellant further argues his right to confront his witnesses was denied when the military judge admitted AM's statements to her mother as residual hearsay under Mil. R. Evid. 807.

"The residual-hearsay rule sets out three requirements for admissibility: (1) materiality, (2) necessity, and (3) reliability." *United States v. Kelley*, 45 M.J. 275, 280 (C.A.A.F. 1996). Although Congress intended this exception to be used rarely and in exceptional circumstances, such a circumstance "generally exist[s] when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005); S. Rep. No. 1277, 93d Cong., 2d Sess., at 20 (1974). A military judge's decision to admit evidence as residual hearsay is entitled to considerable discretion. *Kelley*, 45 M.J. at 280-81. We further look for indicia of reliability or trustworthiness when assessing admissibility of a residual hearsay statement.

The statements AM made to her mother about the abuse by the appellant are material, thus this case focuses on the necessity and reliability prongs. The necessity prong is akin to a "best evidence" requirement, but is applied more liberally to statements made by child victims. *Kelley*, 45 M.J. at 280. Even if the residual hearsay from a child victim may be cumulative in some aspects, it may still be material evidence which is important to evaluating other evidence and arriving at the truth. *Id.*

In order for a hearsay statement to be admissible under the residual hearsay exception it must have circumstantial guarantees of trustworthiness. *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003); *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991). In order to determine if the statement has circumstantial guarantees of trustworthiness, we look at the indicia of reliability that include, but are not limited to: the mental state of the declarant, the spontaneity of the statement, the use of suggestive questioning, whether the statement can be corroborated, the declarant's age and the circumstances under which the statement was made. *Donaldson*, 58 M.J. at 488. A military judge's factual findings on the existence of circumstantial guarantees of trustworthiness are reviewed for clear error. *Id.* "A declarant's young age is a positive factor supporting admissibility and assuring trustworthiness as it lessens the degree of skepticism with which we might view his or her motives." *United States v. Lingle*, 27 M.J. 704, 708 (A.F.C.M.R. 1988).

Here, the military judge determined that AM was not available and the hearsay statements were necessary. The military judge considered AM's prior testimony in court, made personal observations and considered expert testimony. *Cf. United States v. Czachorowski*, 66 M.J. 432, 436 (C.A.A.F. 2008) (holding a trial judge may not rely only on counsel's proffer regarding unavailability to admit hearsay under the residual

exception).  The trial judge specifically found that AM was "substantially incapable of testifying at trial due to her young age and the passage of time" and that she was only able to testify "[i]n the vague and fleeting manner of a child at play."  "It seems counterintuitive that a witness who professes no memory of an event described in an earlier statement is available for confrontation purposes but unavailable for hearsay purposes.  Yet that is the law." *United States v. Rhodes*, 61 M.J. 445, 450 (C.A.A.F. 2005).  The military judge also found that "[a]lthough there's some overlap between what [AM] told her mother and things she has later been able to say to Dr. [MH] and here in court, most of what was said to her mother is evidence available nowhere else."  The military judge's findings of fact were not clearly erroneous.  Especially in light of the more liberal application of necessity for statements by child victims, we concur that the necessity prong was met.

The military judge made detailed findings of fact regarding the circumstantial guarantees of trustworthiness.  The military judge determined the following facts were sufficient evidence of the circumstantial guarantees of trustworthiness:  (1) the statements were not made to law enforcement or anyone in an official investigatory position; (2) AM first raised the issue of abuse spontaneously; (3) AM raised the issue because she was troubled and seeking guidance or consolation from the person she trusted most, her mother; (4) AM began her statements without any questioning; (5) SSgt DG's subsequent questioning was not suggestive; (6) AM's statements were sufficiently detailed to unambiguously describe what occurred, using her normal vernacular; (7) AM's statements suggest an advanced knowledge of both inappropriate sexual activity and a perpetrator's fear and efforts to avoid detection; (8) AM's tone and demeanor when she made the statements were serious, in contrast to her normal playful self; (9) AM's statements to her mother were internally consistent and not self-contradictory; (10) AM has not recanted her statements and they are consistent with the less specific statements she has made as her memory diminished; (11) there was no motive on the part of the mother to fabricate serious allegations against the appellant; (12) there was no motive for AM to fabricate; and (13) AM was able to distinguish between fact and fantasy.

The appellant claims the military judge was clearly erroneous in some of his factual findings.  For example, the appellant claims the military judge erred because AM's mother and the appellant had a break in their friendship at the time she reported AM's allegations.  However, the military judge specifically found that although SSgt DG and the appellant "appear to have experienced certain moments of friction between one another, . . . on the whole there's every indication that they were generally friendly towards one another."  The military judge heard the evidence and made the detailed findings of fact.  The military judge may consider extrinsic circumstances as well as the circumstances surrounding the statement when deciding on the reliability of the declaration. *Kelley*, 45 M.J. at 281.  The military judge is charged with hearing evidence that may be in conflict and making reasonable inferences from that evidence.  "The rules of evidence contemplate that a military judge will be 'a real judge,' exercising discretion

rather than slavishly applying mathematical formulae." *Id.* at 281 n.\*. "[T]he wisest course is to defer to the sound discretion of the trial judge, who has unequaled experience in witnessing battles over credibility." *United States v. Harrison*, 296 F.3d 994, 1006 (10th Cir. 2002). The military judge in this case was a "real judge" who exercised his discretion. We conclude there was no clear error in the military judge's findings of fact on the circumstantial guarantees of trustworthiness and concur that the reliability prong was met.[4]

The military judge did not abuse his "considerable discretion" in admitting AM's statements to her mother as residual hearsay. The evidence produced at trial was that AM's statements to her mother were material, necessary, and reliable. The statements met the three prongs of admissibility as residual hearsay and contained sufficient indicia of reliability. We uphold the military judge's decision to admit the statements.

*Hearsay Exception for Statements made for Medical Diagnosis or Treatment*

The appellant claims the military judge abused his discretion by admitting the statements AM made to Dr. MH. The military judge found these statements to be for the purpose of medical diagnosis and treatment and were therefore admissible under Mil. R. Evid. 803(4).

We review a military judge's ruling on the admissibility of hearsay evidence for an abuse of discretion. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). Military Rule of Evidence 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment." Our superior court established a two part test for determining if statements met the requirements for this exception: (1) the statements must be made for the purpose of medical diagnosis and treatment, and (2) the patient must make the statement with some expectation of receiving a related medical benefit. *United States v. Edens*, 31 M.J. 267 (C.M.A. 1990) (quoting *United States v. Deland*, 22 M.J. 70, 75 (C.M.A. 1986)) (internal quotation marks omitted). Statements by a child witness about abuse, to include the identity of the abuser, are admissible under this exception. *Lingle*, 27 M.J. at 704; *United States v. Fling*, 40 M.J. 847 (A.F.C.M.R. 1994).

---

[4] The Federal Circuits have interpreted the residual hearsay rule in a similar fashion when applied in cases of child victim testimony. The Fourth Circuit upheld a trial judge's admission of statements under the residual hearsay rule even after the child witnesses recanted. *United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998). That court found no abuse of discretion and emphasized the serious nature of the repeated statements and the consistency of the statements as factors that provide clear indicia of trustworthiness. *Id.* The Tenth Circuit upheld a trial judge's decision to admit statements from a recanting child victim under the residual hearsay rule and emphasized the consistency of the statement with two other admissible statements, and the compelling details of the statement. *United States v. Harrison*, 296 F.3d 994 (10th Cir. 2002). The Eighth Circuit upheld a decision to admit residual hearsay of a child victim and highlighted the consistency of the prior statements, the use of age appropriate language by the child, and the open-ended questions by the interviewers. *United States v. Peneaux*, 432 F.3d 882 (8th Cir. 2005).

"Cases of child sexual abuse have presented particular challenges to our courts when analyzing the expectations of very young children." *Russell*, 66 M.J. at 606. Although the required proof is relaxed by a modicum when the patient is a child, there must still be sufficient evidence to support a finding that both prongs of the test are met. *United States v. Faciane*, 40 M.J. 399, 403 (C.M.A. 1994). "In conducting an analysis of a child-victim's expectation when receiving medical treatment, courts can look beyond the testimony of the child and consider the testimony of the treating care provider and others who explained the purpose of the meeting with the provider." *Russell*, 66 M.J. at 606 (citing *Hollis*, 57 M.J. at 79-81).

AM's mother explained to her that they were going to the hospital so a doctor could make sure she was ok. Dr. MH explained to AM that he was a "kid doctor" and was there to evaluate AM to see if treatment was necessary. *Cf. United States v. Avila*, 27 M.J. 62 (C.M.A. 1988) (holding that statements by a four-year-old child to a psychologist who introduced herself with her first name and as "just another Mommy" were not admissible). Dr. MH treated AM in a clinical setting, completing a thorough physical examination, as well as a history of the alleged complaints. Further, Dr. MH had a medical justification in learning the identity of the alleged abuser. Based on a totality of the circumstances, we conclude the military judge did not abuse his discretion in admitting the statements. *See United States v. Marchesano*, 67 M.J. 535 (Army Ct. Crim. App. 2008) (holding that statements made by a child who was brought to an emergency room by her mother were admissible when the child knew a doctor would conduct a medical exam, the physician explained he was a doctor, and he asked questions about medical history and performed a physical examination of the child).

*Legal and Factual Sufficiency*

We review issues of factual and legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are . . . convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt[]" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. "[I]n

resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The evidence in the record is that AM made a spontaneous statement to her mother that she had been abused by the appellant. This statement was consistently repeated by AM to her mother and to a medical provider. She has repeatedly apologized to her mother about being abused. When confronted by the allegations during a pretext phone call, the appellant provided an explanation of bathing with AM that did not match with his best friend's knowledge. We have taken a fresh impartial look at the evidence, made allowances for not having personally observed the witnesses, and now make our own independent determination that the evidence is proof beyond a reasonable doubt of the appellant's guilt. Similarly, when considering the evidence in the light most favorable to the prosecution, we conclude that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[5] We note that the court-martial order (CMO) contains an incorrect sentence date and both the Action and CMO fail to contain the reprimand language. We order the promulgation of a corrected CMO after a new Action is accomplished. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10 (6 June 2013).