# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

**UNITED STATES**

**v.**

**Senior Airman ALLEN R. HENDERSON**
**United States Air Force**

**ACM 38379**

**29 December 2014**

Sentence adjudged 15 February 2013 by GCM convened at Whiteman Air Force Base, Missouri. Military Judge: Natalie D. Richardson.

Approved Sentence: Dishonorable discharge, confinement for 25 years, and reduction to E-1.

Appellate Counsel for the Appellant: Frank J. Spinner, Esquire (civilian counsel) (argued); Major Nicholas D. Carter; and Captain Travis Vaughn

Appellate Counsel for the United States: Major Mary Ellen Payne (argued); Lieutenant Colonel Katherine Oler; Major Daniel J. Breen; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

CONTOVEROS, Judge:

In accordance with his plea, the appellant was convicted at a general court-martial of one specification of assault consummated by a battery of a child, in violation of Article 128, UCMJ, 10 U.S.C. § 928. A panel of officer members also convicted the appellant, contrary to his pleas, of two specifications of aggravated sexual contact with a child, two specifications of indecent liberty with a child, and one specification of indecent exposure, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged

and approved sentence consisted of a dishonorable discharge, confinement for 25 years, and reduction to E-1.

The appellant raises four issues on appeal: (1) whether the evidence is legally and factually insufficient to support his convictions of sexual contact with a child, indecent liberty with a child, and indecent exposure; (2) whether the military judge abused her discretion when she admitted statements of the victim under Mil. R. Evid. 807; (3) whether the military judge abused her discretion when she admitted statements of the victim under Mil. R. Evid. 801(d)(1)(B); and (4) whether the military judge denied the appellant the right to cross-examine the victim in violation of the Sixth Amendment.[1] This court granted oral argument on the second, third, and fourth issues. Finding no error that materially prejudices the appellant, we affirm.

*Background*

In November 2011, MB's mother was looking for someone to watch MB in the afternoons after preschool, and the appellant's wife was recommended. After MB's mother met the appellant's wife and visited their home, she arranged for MB to stay there after preschool. The appellant's wife began providing daycare for MB, who was four years old, three days a week for approximately 2–3 hours each day. MB's two older siblings typically went to an after-school club, but on a few occasions the appellant's wife cared for them as well. As often as once a week, the appellant was present in the home while his wife was caring for MB.

On the way to preschool on 3 May 2012, MB asked her mother who would be picking her up that day. When told she would go to the appellant's house, MB began crying. MB's mother did not enter the appellant's house when she picked her daughter up that afternoon but did see his truck parked there. A short time later, when MB's mother was giving MB a bath, MB refused to sit down in the water. MB's mother then noticed that MB's vaginal area was red and swollen, and MB complained that it was itchy. That same evening, MB was uncharacteristically shy, withdrawn, and clingy.

The next morning, MB told her mother that the appellant had touched her "front-bottom." Front-bottom was the term she used to reference the vaginal area. MB's mother decided not to take her to preschool that day, and she instead took MB to her grandmother's house. When they arrived, MB's mother told MB to tell her grandmother what MB had told her in the car. MB's grandmother asked her what she needed to tell her, or words to that effect, and MB related to her grandmother that the appellant had touched her front-bottom. MB's mother was listening as MB made several other statements about her interactions with the appellant. The admissibility of these

---

[1] U.S. CONST. Amend VI.

statements is challenged in the appellant's second assignment of error, and they are therefore discussed in more detail in that section below.

As a result of MB's statements to her mother and grandmother, MB's mother called the Division of Family Services (DFS) and took her to a pediatrician. Later that same day, on 4 May 2012, MB was taken to the hospital for a sexual assault forensic exam (SAFE). When they returned home later that evening, MB's ten-year-old sister, SB, asked why MB had been at the hospital. MB's mother told SB that the appellant had hurt MB, which prompted SB to tell her mother that she saw the appellant watching pornographic movies on his laptop when she was at his house. MB's mother later told DFS what SB had said about seeing these videos on the laptop. On 10 May 2012, both MB and SB were separately interviewed by a child forensic interviewer, in what are referred to as Child Safe interviews, and both interviews were videotaped.

At trial, MB took the stand and testified against the appellant. Trial counsel had some difficulty keeping the four-year-old witness's attention during direct examination, as did trial defense counsel on cross-examination. After her testimony and over defense objection, the Government was permitted to admit portions of the videotaped Child Safe interview of MB as prior consistent statements. In addition, the military judge allowed MB's 4 May 2012 statements to her mother and grandmother, which were not elicited from MB during her in-court testimony, to be considered as substantive evidence under the residual hearsay exception.

Additional facts necessary to the resolution of these issues are outlined below.

*Residual Hearsay*

The appellant asserts that the military judge abused her discretion by admitting MB's statements to her mother and grandmother on 4 May 2012 under Mil. R. Evid. 807 and that his right to confrontation was denied as a result.[2]

The residual hearsay exception permits the introduction of hearsay testimony not covered by Mil. R. Evid. 803 or Mil. R. Evid. 804, where, given "equivalent circumstantial guarantees of trustworthiness," the military judge determines that:

---

[2] The appellant includes as part of this alleged error that his Sixth Amendment right to confrontation was violated by the admission of these statements under Mil. R. Evid. 807. However, he elaborated no further on this point in either his brief or his oral argument before this court. The statements at issue are non-testimonial; therefore they do not implicate *Crawford* or its progeny. *See Crawford v. Washington*, 541 U.S. 36 (2004). In addition, our holding with respect to the appellant's assignment of error claiming that his Sixth Amendment right to confrontation was violated because he was not permitted to cross-examine MB, see discussion *infra*, further renders this issue moot. When hearsay evidence is admitted, the Confrontation Clause is satisfied when "the hearsay declarant is present at trial and subject to unrestricted cross-examination." *United States v. Owens*, 484 U.S. 554, 560 (1988).

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Mil. R. Evid. 807. Congress intended the exception to be used rarely and in exceptional circumstances, but such a circumstance "generally exist[s] when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005) (quoting *United States v. Shaw*, 824 F.2d 601, 609 (8th Cir. 1987)); S. REP. NO. 93-1277, at 20 (1974).

We review a military judge's ruling with regard to Mil. R. Evid. 807 for an abuse of discretion. *United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008). "We accord a military judge 'considerable discretion' in admitting evidence as residual hearsay." *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003) (quoting *United States v. Kelley*, 45 M.J. 275, 281–82 (C.A.A.F. 1996)). "Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo." *Czachorowski*, 66 M.J. at 434 (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

"The residual-hearsay rule sets out three requirements for admissibility: (1) materiality, (2) necessity, and (3) reliability." *Kelley*, 45 M.J. at 280. As a threshold matter, we find that the military judge reasonably found that the statements she admitted under Mil. R. Evid. 807 were material and that admission served both the general purposes of the Military Rules of Evidence and the interests of justice. MB's statements to her mother and grandmother described in more detail the facts and circumstances of the appellant's abuse. Specifically, MB told them that the appellant:

(1) Took off her skirt;
(2) Wanted her to "touch it;"[3]
(3) Wanted her to "slurp it off"[4] and she said no, and;
(4) Wanted to touch SB's bottom.

These statements are material not only to the charges of aggravated sexual contact and indecent liberty with MB, but they are relevant to the charge of indecent liberty with SB as well. We therefore focus on the necessity and reliability prongs.

---

[3] In this statement, MB refers to the appellant's penis as "it."
[4] This statement refers to the appellant's request that MB slurp the "white stuff" that came out of his "wienee."

The "necessity" prong, which is Clause B of the Rule, balances the probativeness of available evidence and requires the proponent to demonstrate that, despite "reasonable efforts," he could not obtain more probative evidence. *See Czachorowski*, 66 M.J. at 435. While the unavailability of the declarant is not determinative, a showing of such unavailability helps satisfy the necessity prong. *Id.* at 436. The necessity prong essentially creates a "best evidence" requirement, though such a requirement is applied more liberally to statements made by child victims. *Kelley*, 45 M.J. at 280. "Even if the residual hearsay from a child victim may be cumulative in some aspects, it may still be material evidence which is important to evaluating other evidence and arriving at the truth." *United States v. Vazquez*, 73 M.J. 683, 690 (A.F. Ct. Crim. App. 2014) (citing *Kelley*, 45 M.J. at 280).

In order to be admitted under the residual hearsay exception, the hearsay statement must also possess circumstantial guarantees of trustworthiness. *Donaldson*, 58 M.J. at 488; *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991). Courts have referred to this requirement as the "reliability" prong. *Kelley*, 45 M.J. at 280–81. In determining whether a statement has the circumstantial guarantees of trustworthiness, we look to a number of indicia of reliability. These may include, but are not limited to: the mental state of the declarant, the spontaneity of the statement, the use of suggestive questioning, whether the statement can be corroborated, the declarant's age, and the circumstances under which the statement was made. *Donaldson*, 58 M.J. at 488. A court's factual findings on the existence of circumstantial guarantees of trustworthiness are reviewed for clear error. *Id.*

The appellant relies heavily on the fact that MB was present and testified at trial, asserting that her direct testimony was the most probative evidence and therefore the Government failed to demonstrate the necessity of her out-of-court statements. The military judge, however, considered MB's in-court testimony, made personal observations of her, and found that although MB testified, she was a four-year-old child who was testifying about something that happened 10 months prior, and that it was understandable that she was not able to answer all of counsel's questions. The military judge then determined that the hearsay statements were necessary. The military judge's findings of fact were not clearly erroneous. While the military judge did not expressly find that MB was unavailable, such a finding is not required. In light of the more liberal application of the necessity requirement to statements of child victims, we concur that the necessity prong was met.

The military judge made specific findings regarding the circumstantial guarantees of trustworthiness and determined the evidence was sufficient to show the statements were reliable. Specifically, the military judge found that: (1) MB's original report of abuse by the appellant, which included the statements at issue here, was made spontaneously; (2) MB's statements suggested knowledge beyond her years of specific sexual activity; (3) there was no reason for MB to fabricate; and (4) MB behaved

uncharacteristically the night before she made the statements by protesting her bath, refusing to sit down in the bathtub, and acting shy and withdrawn. In addition, we considered the following facts: MB's statements were made to her family members, not to any law enforcement agent or representative; MB used age-appropriate language to describe what the appellant did; and there is no evidence that MB's mother or grandmother used suggestive questioning when subsequently talking to MB about what happened with the appellant. We conclude there was no clear error in the military judge's findings of fact with regard to the circumstantial guarantees of trustworthiness and agree that the reliability prong was satisfied.

The military judge did not abuse her considerable discretion in admitting MB's statements to her mother and grandmother as residual hearsay under Mil. R. Evid. 807. The military judge evaluated the evidence, balanced the probative value of the statements, and properly determined that MB's statements were material, necessary, and reliable. Accordingly, the statements met the requirements of admissibility as residual hearsay, and we uphold the military judge's decision to admit them.

*Prior Consistent Statements*

The appellant asserts that the military judge abused her discretion by admitting statements MB made during a Child Safe interview on 10 May 2012 under Mil. R. Evid. 801(d)(1)(B).

A military judge's decision to admit evidence is reviewed under an abuse of discretion standard. *Donaldson*, 58 M.J. at 482. When the decision involves a mixed question of law and fact, as in this case, it is an abuse of discretion if the "findings of fact are clearly erroneous or [the] conclusions of law are incorrect." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). We give greater deference to a military judge who chronicles her analysis and application of the law to the facts on the record. *United States v. Flesher*, 73 M.J. 303, 311–12 (C.A.A.F. 2014).

A prior consistent statement is not hearsay if it is "offered to rebut an express or implied *charge* against the declarant of recent fabrication or improper influence or motive." Mil. R. Evid. 801(d)(1)(B) (emphasis added). Our superior court

> has consistently interpreted the rule to require that a prior statement, admitted as substantive evidence, precede any motive to fabricate or improper influence that it is offered to

rebut. Where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut.

*United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998) (citations omitted).

After the Government presented the majority of its evidence and in light of the cross-examination of MB's mother and grandmother, trial counsel offered MB's videotaped Child Safe interview as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B). The military judge found that during the course of the trial, the defense had raised a charge of improper influence against MB. The military judge specifically defined the defense's charge as follows:

> That sometime after this child safe interview, on the 10th of May, she was influenced either directly by her mother or grandmother, or just by repeating the story, what defense counsel calls "inconsistencies in the allegations growing."

She therefore allowed the relevant portions of that interview to be admitted as evidence.[5]

The appellant argues that this finding was clearly erroneous because "[t]o the extent the defense theory was built on the conclusion MB was influenced by her mother . . . and her grandmother . . . that influence began before the [Child Safe] interview," and therefore the foundational requirements of Mil. R. Evid. 801(d)(1)(B) could not have been met. Stated another way, the appellant argues that MB's statements made during the interview could not rebut the charge of improper influence, in that the alleged improper influence arose not only prior to the Child Safe interview but even before MB's initial report.

Our analysis turns on the timing of both the statement sought to be admitted and of the charge of improper influence. *See United States v. McCaskey*, 30 M.J. 188, 192 (C.M.A. 1990) ("[T]o be logically relevant to rebut such a charge [of improper influence or motive], the prior statement typically must have been made *before* the point at which the story was fabricated or the improper influence or motive arose."); *United States v. Faison*, 49 M.J. 59, 61 (C.A.A.F. 1998) ("Thus, the point in time to be ascertained for purposes of rebuttal [under Mil. R. Evid. 801(d)(1)(B)] is the fair implication of the *charge*, not the arguable underlying event."); *United States v. Meyers*, 18 M.J. 347, 351 (C.M.A. 1984) (stating that a theoretical possibility that the statement was made at a time

---

[5] The military judge correctly noted that parts of the Child Safe interview were not prior consistent statements, and the playback of the interview was muted during those portions.

when improper interest existed does not dictate that the evidence of the statement be excluded); *United States v. Morgan*, 31 M.J. 43, 46 (C.M.A. 1990) (where defense alleged that accusations were falsified from the beginning and additionally charged fabrication since the testimony of the witness at the Article 32, UCMJ, hearing, a videotaped interview that occurred prior to the hearing was properly admitted to rebut the implication of the most recent fabrication).

*Morgan* involved a child victim who was sodomized by her neighbor. The defense theory was that the child's mother coached her from the outset to fabricate the incident so the child's father would be returned early from an overseas military assignment. Defense counsel first highlighted that theory in his opening statement, reiterated it in closing argument, and tailored his cross-examinations of both the child victim and her mother to develop his theory. He attempted to impeach the child victim on alleged inconsistencies between her accounts, specifically that her in-court testimony differed from her testimony at the Article 32 hearing, and by having her admit that she had repeatedly told the same story. Likewise, he attempted to impeach the child's mother with allegedly inconsistent statements. *Id.* at 44–45. To rebut the more recent charge of fabrication that the child's testimony had changed since the Article 32 hearing, trial counsel sought to admit a videotaped interview between the child victim and a social worker. Defense counsel objected on the same ground as the appellant does in the case before us—that the videotape would not rebut the charge of coaching because the motive to fabricate had already risen prior to the initial complaint. *Id.* at 45. Because the defense actually raised two separate theories that (1) the child's story was coached and fabricated from the beginning, and (2) her trial testimony was inconsistent with that given at the Article 32 hearing, our superior court held the videotape was properly admitted to rebut the implication of the most recent fabrication. *Id.* at 46.

The facts of this case are very similar to those in *Morgan*. While the appellant contends that his theory was only that MB was influenced from the beginning, the record reveals otherwise. In his opening statement, trial defense counsel informed the members that they would hear inconsistencies, that such inconsistencies would "drift towards the more elaborate stories," and to listen for "whether the allegations grew." Trial defense counsel attempted to impeach MB's mother about inconsistencies in her own testimony about what MB told her. Additionally, he attempted to impeach MB's grandmother by questioning her about a 29 May 2012 conversation she had with DFS, in which DFS had noted her concern that MB's mother might be talking about the case too much in front of the children, and that they needed to keep such conversations private so the children, to include MB, would not hear. The military judge noted that this last line of questioning about the 29 May 2012 conversation gave the impression that the children might not only be fearful were they to overhear family members talking about the case, but that "they may hear it and then sort of adopt what they're hearing as their own story." Essentially, trial defense counsel attempted to attack MB's credibility through his cross-examination of her mother and grandmother. Lastly, he argued in closing that it was "difficult to

know what happened [with MB] because there were too many times for improper tampering."

Despite the appellant's position that his only theory regarding improper influence was that it began before MB's original report of abuse, he raised a separate theory that MB continued to be influenced through interactions with her mother and grandmother. The military judge found that at least one such charge of improper influence arose after the 10 May 2012 Child Safe interview. There is nothing in the record to indicate her finding was clearly erroneous.

Admissibility of prior consistent statements is "a matter of choice by the party opposed to the witness, who may open the door to the use of such statements by engaging in a particular kind of impeachment, or leave the door shut by refraining." *Morgan*, 31 M.J. at 46; s*ee also Faison*, 49 M.J. at 61. The appellant, both through his theory of the case and his chosen method of impeachment of witnesses, opened the door to the use of MB's Child Safe interview. In light of the foregoing, the military judge did not abuse her discretion when she admitted portions of the Child Safe interview of MB.

*Sixth Amendment Right to Confrontation*

The appellant next avers that he was denied the right to cross-examine MB in violation of his Sixth Amendment right to confrontation. The Government argues that the appellant waived, or at least forfeited, any Confrontation Clause objection, and that even if he did not, the constitutional requirement was met.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has identified three purposes of confrontation: (1) to ensure the witness's statements are given under oath; (2) to require the witness to be available for cross-examination, the "greatest legal engine ever invented for the discovery of truth"; and (3) to permit the finder of fact to observe the demeanor of the witness, thus aiding in assessing credibility. *California v. Green*, 399 U.S. 149, 158 (1970). The Court clarified that "[t]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). A witness is "'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *Id.* at 561.

The Court later reiterated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9

(2004). Our superior court has explicitly held that *Crawford* did not overrule *Owens*. *United States v. Rhodes*, 61 M.J. 445, 450 (C.A.A.F. 2005).

The facts of this case are that MB appeared in court and answered questions posed to her by trial counsel. Trial defense counsel also asked MB a number of questions but ended his cross-examination before asking any substantive questions about the offenses involving her as the alleged victim. After MB was excused, trial defense counsel objected that because of MB's age, short attention span, and her preoccupation with attending a Valentine's Day party later that day, he did not have an opportunity to effectively cross-examine her. After some discussion on the merits of the objection and potential remedies, trial defense counsel requested the opportunity to cross-examine MB the following day. The military judge found that defense counsel had an opportunity to cross-examine MB, and she denied his request to cross-examine her again the following day, but she specifically told trial defense counsel he could recall MB during the defense's case-in-chief. *See* Mil. R. Evid. 611(a) and (c) (allowing the military judge to control the mode and order of interrogating witnesses and permitting leading questions on direct examination when a party calls a witness identified with an adverse party). Trial defense counsel elected not to recall MB.

The Government argues that because the appellant made a conscious decision not to recall MB, he waived, or at least forfeited, his right to have this issue reviewed on appeal. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008). If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. *See Harcrow*, 66 M.J. at 156 (citing *Olano*, 507 U.S. at 733–34). When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. *Id*. "[T]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." *Id*. at 157 (citations and internal quotation marks omitted). In this case, trial defense counsel objected to MB's testimony on the ground that he did not have the opportunity to effectively cross-examine her. The military judge disagreed but nonetheless explicitly afforded defense counsel the option to recall MB during his case-in-chief. Trial defense counsel's decision not to recall MB constituted waiver of this objection.

Even if the appellant did not waive this issue, we find no error. Military case law regarding the application of the Confrontation Clause as it pertains to child witnesses in cases of alleged abuse is limited. However, this court recently decided a similar issue in *United States v. Vazquez*, 73 M.J. 683 (A.F. Ct. Crim. App. 2014). In *Vazquez*, the court examined cases decided by our sister service courts, as well as several federal circuit cases that dealt with child witnesses, before concluding the child victim in that case was

present for Confrontation Clause purposes. In doing so, the court highlighted that it was trial defense counsel's decision to cease cross-examination of the witness but that the child's presence on the stand, under oath, provided the defense the "*opportunity* for cross-examination." *Vazquez*, 73 M.J. at 689.

Similarly, in this case, we conclude MB was present and testified at trial.[6] She took the stand, took the oath in a manner appropriate for her age, and was subject to questioning.[7] While it was necessary for trial counsel to refocus her attention more than once during his direct examination, MB did not refuse to answer questions or otherwise render herself unavailable. As noted above, trial defense counsel did ask MB several questions, but for reasons not apparent to this court, concluded his cross-examination of the child witness without asking her about any of the charged offenses. The Confrontation Clause requires only an opportunity for cross-examination; we conclude the constitutional requirement was met.

*Legal and Factual Sufficiency*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [our]selves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (internal quotation marks omitted). Proof beyond a reasonable doubt does not mean that the evidence must be free of conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

---

[6] We note that pursuant to her ruling on a pretrial motion, the military judge permitted remote live testimony of MB at trial.

[7] It is this "presence" at the court-martial that concerns the appellant in his previous assignment of error regarding residual hearsay. The appellant irreconcilably argues that MB was unavailable for purposes of the Confrontation Clause but available for purposes of Mil. R. Evid. 807 such that her hearsay statements were improperly admitted. We find these arguments untenable.

The appellant contends his convictions in violation of Article 120, UCMJ, are legally and factually insufficient, attacking the credibility of all three child witnesses. We discuss each in turn below.

## 1. Specifications Involving MB

The appellant was convicted of two specifications of aggravated sexual contact with MB and one specification of indecent liberty with MB. Specifically, the appellant had MB touch his penis, he touched her vagina, and he ejaculated in her presence and view. The appellant argues MB is not credible because she was improperly influenced by her mother and grandmother and because her testimony at trial was "nonresponsive." We disagree.

Having concluded that the military judge did not abuse her discretion in admitting the child's hearsay statements and prior consistent statements, we are convinced that the evidence was factually sufficient to convict the appellant. At trial, MB testified coherently and convincingly, as best a four-year-old can, as to her interactions with the appellant. She used age-appropriate language to describe events outside the normal experience of children her age who have not been subjected to sexual abuse. To the extent that MB was influenced by her mother or grandmother, if at all, we are unconvinced that such influence resulted in MB's testimony being fabricated or substantially altered. The evidence in the record is that MB made a spontaneous statement to her mother on 4 May 2012 that she had been touched on her "front-bottom" by the appellant. She made a similar statement, with more detail, to her grandmother the same day and again during a separate Child Safe interview on 10 May 2012. MB specifically recounted at trial that the appellant touched her bottom,[8] had her touch his "wienee" directly on the skin, and that she saw "white stuff" come out of it.

After applying the test for legal sufficiency and viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable fact finder could have found all the essential elements beyond a reasonable doubt and therefore find the evidence is legally sufficient. Additionally, taking a fresh, impartial look at the evidence in the record and making allowances for not having personally observed the witnesses, we now make our own independent determination that the evidence proves the appellant's guilt beyond a reasonable doubt.

## 2. Specification Involving SB

The appellant was convicted of one specification of indecent liberty with SB in that he watched pornography in her presence. The appellant argues that SB may also have been improperly influenced by her mother. He further alleges that the evidence was

---

[8] At trial, MB identified the vagina as a "bottom" on a diagram of a girl.

insufficient to prove that the appellant had the requisite intent to arouse the sexual desire of either SB or himself by viewing said videos in her presence.

SB was ten years old at the time she saw pornography on the appellant's laptop. She and her siblings, along with the appellant's children, were in the living room of the appellant's home while the appellant's wife was babysitting them. SB testified at trial that she was sitting on the couch in the appellant's living room when the appellant sat down on the couch with his laptop. SB described seeing inappropriate pictures and videos on the laptop of "girls licking boys' wieners" and that the people in the videos were "more naked" than clothed.

The appellant argues that no evidence of intent was admitted and therefore the evidence was legally and factually insufficient to sustain the conviction. However, "direct evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice." *United States v. Hart*, 25 M.J. 143, 147 (C.M.A. 1987); *see also* Rule for Courts-Martial 918(c) ("Findings may be based on direct or circumstantial evidence."). A factfinder may reasonably rely on the surrounding circumstances to infer whether an accused had a requisite intent. As to the specification regarding SB, a reasonable factfinder could infer the appellant had the intent to arouse or gratify his own sexual desires or those of SB from SB's testimony that the appellant sat down on the couch with her, proceeded to view at least ten different pornographic videos and images on his laptop in her presence, and that he was positioned such that no one else in the room, other than he and SB, could view the screen.

We are firmly convinced of the appellant's guilt beyond a reasonable doubt and find the evidence is both legally and factually sufficient.

### 3. Specifications Involving ML

The appellant was convicted of indecent exposure, primarily based on the testimony of ML. The appellant avers that ML embellished her story. The appellant further argues that ML cannot be believed because no one else saw what she claimed to have seen. This argument is without merit.

ML, who was 13 years old at the time of the offense, testified that she was sitting with KM on a porch when she saw the appellant pull up in a black truck and stop at an intersection near the house sometime in April 2012. She saw the appellant get out of the truck, walk around to the passenger side, open the door, and stand behind it. ML next saw the appellant pull down his pants and start masturbating.[9] ML then alerted KM. Although KM did not see the appellant's exposed penis or see him masturbating, she did corroborate ML's testimony in that she too saw a black truck parked at the nearby

---

[9] The appellant was acquitted of the specification of indecent liberty with a child that arose from these facts.

intersection and a man standing behind the passenger door of the truck. The two girls then went inside. KM described ML's demeanor after witnessing the appellant as surprised and upset, and further testified that ML cried about it later.

ML was, in fact, the only witness who saw the appellant expose himself. As an evidentiary standard, proof beyond a reasonable doubt does not require that the evidence be free from conflict. *Lips*, 22 M.J. at 684. Nor does it require that more than one witness testify credibly about an event. *United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006). Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable fact finder could have found all the essential elements of indecent exposure beyond a reasonable doubt. Additionally, taking a fresh, impartial look at the evidence in the record and making allowances for not having personally observed the witnesses, we find the evidence sufficient to prove the appellant's guilt beyond a reasonable doubt.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[10] Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[10] We note that there was a DVD included as an attachment to Appellate Exhibit I which, although affixed to the record, could not be accessed by any program readily available to the court and was therefore not available for review on appeal. The record indicates that the DVD contains an interview in which the appellant submitted to a computerized voice stress analysis. This DVD was an attachment to the appellant's motion at trial to suppress statements made to investigators; he does not challenge the military judge's ruling on that motion on appeal. We held a status conference with both parties to discuss this matter. In a general court-martial in which the sentence adjudged includes a punitive discharge, a complete record of the proceedings and testimony is required. Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1). A complete record includes, inter alia, appellate exhibits. Rule for Courts-Martial 1103(b)(2)(D)(v). Not every omission from the record of trial, however, renders it incomplete. In assessing whether a record is complete, the threshold question is "whether the omitted material was 'substantial,' either qualitatively or quantitatively." *United States v. Davenport*, 73 M.J. 373, 377 (C.A.A.F. 2014) (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000). The defective DVD relates only to the pre-trial motion and has no bearing on the findings or sentence. In addition, the appellant does not raise the issue of completeness on appeal. We find that the inability to view the DVD does not render the record of trial incomplete.