# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM 38941

————————————

### UNITED STATES
*Appellee*

**v.**

### Ricardo S. BARBARY, Jr.
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 April 2017

————————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 3 September 2015 by GCM convened at Peterson Air Force Base, Colorado.

*For Appellant:* Captain Patrick A. Clary, USAF; Major Michael A. Schrama, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major Meredith L. Steer, USAF; Captain Tyler B. Musselman, USAF; Gerald R. Bruce, Esquire.

Before DUBRISKE, HARDING, and C. BROWN, *Appellate Military Judges.*

Senior Judge DUBRISKE delivered the opinion of the court, in which Judges HARDING and C. BROWN joined.[1]

————————————

[1] Senior Judge Dubriske participated in this decision prior to his reassignment.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

DUBRISKE, Senior Judge:

Contrary to his pleas, Appellant was convicted by a military judge sitting alone of one specification of rape of a child under 12 years of age and four specifications of sexual abuse of a child under 12 years of age, all in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[2] Appellant was found not guilty of an additional specification of rape of a child, as well as one specification of sexual abuse of a child. All of the charged offenses involved the same victim.

Appellant was sentenced to a dishonorable discharge, 12 years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged. However, the convening authority deferred all forfeitures of pay and allowances until action based on Appellant's request that his dependents receive some limited financial support.

Appellant raises four issues on appeal: (1) the military judge erred in admitting statements from the victim as residual hearsay under Military Rule of Evidence (Mil. R. Evid.) 807; (2) the military judge erred in failing to disclose Department of Human Services (DHS) records after her in camera review; (3) the military judge erred by admitting charged offenses as propensity evidence under Mil. R. Evid. 414; and (4) three of Appellant's sexual abuse convictions were factually insufficient.

We find Appellant is not entitled to relief and, therefore, affirm the findings and sentence.

## I. BACKGROUND

Appellant and his spouse, MB, lived in government housing on Kadena Air Base, Japan, with their large blended family. MB brought five children into the marriage, including her daughter, KJ, the victim in this case. Appellant

---

[2] The military judge found Appellant guilty of one specification of sexual abuse by touching the victim's breast by excepting the "on divers occasions" language from the specification. The military judge specifically found the conduct took place on one occasion around the victim's eleventh birthday. The military judge also excepted out an improper touching of the victim's torso in another specification, finding Appellant guilty only of touching the victim's vaginal area with his hand as also charged by the Government in the specification.

and MB also had two children together who lived in the family home. The home was a duplex in which an internal doorway between two separate residences had been constructed to give Appellant and his family sufficient living space. Appellant, his wife, and their younger children occupied the bedrooms on one side of the duplex, while KJ and her older brothers had bedrooms on the other side.

In early January 2014, KJ reported to a friend's mother, Staff Sergeant (SSgt) IM, that Appellant had touched her in her private places. After talking to a friend, SSgt IM contacted KJ's mother, MB, and eventually met her in the parking lot of a dining facility on Kadena Air Base to discuss KJ's report. Prior to meeting with MB, SSgt IM remembered a conversation a few weeks earlier where MB had asked about getting a lock to put on KJ's door because of concerns MB had after Appellant spent too much time in KJ's room one night after coming home intoxicated. Notwithstanding her concerns and desire to obtain a lock, MB informed SSgt IM that she did not believe Appellant was doing anything inappropriate.

After meeting with SSgt IM and being told about the allegations, MB asked SSgt IM if KJ could stay with her for a while longer to allow her to return home and talk with Appellant about the allegations. Shortly thereafter, however, MB contacted SSgt IM and asked that she bring KJ home. SSgt IM contacted her supervisor for guidance on how to handle KJ's allegations. Her supervisor recommended she contact base law enforcement, which she did that same day.

The Air Force Office of Special Investigations (AFOSI) was notified of the incident based on SSgt IM's report. KJ was interviewed by an AFOSI child forensic interviewer about the allegations later that same day, which was videotaped. KJ reported Appellant frequently entered her room and touched her breasts, buttocks, and vaginal area with his hand. Appellant would also place his hand between her buttocks on occasion and rub around her anus. KJ also reported that Appellant licked her "private spot" once. According to KJ, the incidents of abuse started around her eleventh birthday in September 2013, and continued until December 2013. KJ reported to AFOSI that she had told her mother a few weeks before telling SSgt IM that Appellant was entering her room and touching her inappropriately. KJ noted the abuse stopped once she told her mother about Appellant's actions.

Shortly after KJ reported the allegations, Appellant and his family were involuntarily relocated from Kadena Air Base to Peterson Air Force Base, Colorado, to ensure the family had access to social service, child protection, and mental health resources that were not available at Kadena Air Base. Once Appellant and his family arrived in Colorado, the El Paso County DHS opened a civil child protective case to investigate the health and welfare of the children, including KJ.

## II. DISCUSSION

### A. Admission of Residual Hearsay

Appellant asserts the military judge abused her discretion by admitting KJ's "outcry" statement to a friend's mother, as well as statements made during her forensic interview with AFOSI in which she detailed various incidents of abuse.[3] Appellant claims the statements were improperly admitted as residual hearsay under Mil. R. Evid. 807 as KJ provided the "best evidence" on the nature and scope of the abuse during her testimony in the Government's case-in-chief.

Prior to trial, the Government gave notice to the Defense of its intent to offer statements made by KJ to others under various hearsay exceptions, including residual hearsay. The Defense moved at trial to prevent the Government from offering any evidence under Mil. R. Evid. 807. After hearing testimony from the two witnesses who heard KJ's initial report of abuse and taking limited argument on the motion, the military judge deferred ruling on the issue until KJ testified at trial.

KJ later testified[4] that Appellant had sexually abused her three times. Two of these incidents took place in KJ's bedroom at night. She reported Appellant entered her room and touched her buttocks over her underwear with his hand. The third incident took place in Appellant's bedroom on an evening when KJ's mother was not present in the house. KJ reported Appellant made her lie down on his bed while he applied lotion to her body after she had showered. KJ testified Appellant attempted to cover her face with a towel and penetrated her "private spot" with his tongue.

When questioned by trial counsel about whether she ever remembered Appellant touching her breasts, anus, or vaginal area, KJ responded that she did not remember any such conduct. On cross-examination, trial defense counsel did not question KJ on her memory, but instead focused her on the number of incidents she had just reported in response to trial counsel's questioning.

> DC: Now, when [trial counsel] asked you some questions, you mentioned three times when you said [Appellant] touched you.

---

[3] KJ's outcry statement to SSgt IM was fairly non-specific, relating that Appellant had touched her "private places" at least five or six times. Conversely, statements made by KJ during the forensic interview encompassed all of the abuse alleged against Appellant at trial.

[4] The military judge granted the Government's motion for remote live testimony of KJ over Defense objection. The military judge found KJ would be unable to testify in open court in the presence of Appellant because there was a substantial likelihood, established by expert testimony, that KJ would suffer emotional trauma from testifying.

KJ: Yes.

DC: And then she asked you about other occasions. Were those the only three times that he touched you?

KJ: Yes.

DC: So there were no other occasions?

KJ: Nope.

Immediately after KJ's testimony, the Government requested the military judge revisit the issue of residual hearsay with regard to KJ's pretrial statements. In addition to evidence provided by the two witnesses who testified earlier about KJ's "outcry" report, the Government requested the military judge also admit KJ's forensic interview with AFOSI. KJ's report of abuse during the forensic interview was fairly consistent in regards to the three incidents of abuse that she testified to at trial. However, KJ also disclosed in some detail in the forensic interview that Appellant had touched her breasts, anus, and vaginal area with his hand when he entered her room at night.

After considering the recording of KJ's forensic interview and taking additional arguments from the parties, the military judge admitted the forensic interview and one of KJ's "outcry" statements under Mil. R. Evid. 807.[5]

We review a military judge's ruling with regard to Mil. R. Evid. 807 for an abuse of discretion. *United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008). "We accord a military judge 'considerable discretion' in admitting evidence as residual hearsay." *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003) (quoting *United States v. Kelley*, 45 M.J. 275, 281–82 (C.A.A.F. 1996)). "Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo." *Czachorowski*, 66 M.J. at 434 (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)).

"The residual-hearsay rule sets out three requirements for admissibility: (1) materiality, (2) necessity, and (3) reliability." *Kelley*, 45 M.J. at 280. Congress intended the exception to be used rarely and in exceptional circumstances, but such a circumstance "generally exist[s] when a child sexual abuse victim relates the details of the abusive events to an adult." *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005) (citing *United States v. Shaw*, 824 F.2d 601, 609 (8th Cir. 1987)).

---

[5] In explaining the basis for her ruling, the military judge also noted the Confrontation Clause had been satisfied by KJ's testimony in the Government's case-in-chief. *See United States v. Vazquez*, 73 M.J. 683, 689 (A.F. Ct. Crim. App. 2014).

Here, KJ's statements were obviously material as they described the incidents of abuse Appellant was charged with at trial. As such, we need only address in detail the military judge's findings regarding necessity and reliability.

The necessity prong evaluates the probative value of other available evidence and requires the proponent to demonstrate that, despite "reasonable efforts," he could not obtain more probative evidence. *See Czachorowski*, 66 M.J. at 435. While the unavailability of the declarant is not determinative, a showing of such unavailability helps satisfy the necessity prong. *Id.* at 436. The necessity prong essentially creates a "best evidence" requirement, though such a requirement is applied more liberally to statements made by child victims. *Kelley*, 45 M.J. at 280. "Even if the residual hearsay from a child victim may be cumulative in some aspects, it may still be material evidence which is important to evaluating other evidence and arriving at the truth." *United States v. Vazquez*, 73 M.J. 683, 690 (A.F. Ct. Crim. App. 2014) (citing *Kelley*, 45 M.J. at 280).

The military judge recognized that KJ's ability to testify at trial complicated the evaluation of the necessity prong. However, given KJ's age and her inability to fully remember the acts of abuse previously alleged against Appellant, the military judge found the necessity prong had been met.

> [T]he necessity part of the test really is the most difficult one in this case. Necessity is akin to a best-evidence requirement. However, case law states that it should be applied more liberally to statements made by a child victim. Necessity may be satisfied when a victim cannot remember or refuses to testify about a material fact and there's no other more probative evidence of the fact. Even if the evidence is somewhat cumulative, it can still be admissible under residual hearsay if it is important in evaluating other evidence and arriving at the truth.
>
> . . . .
>
> In child sex abuse cases necessity is easily found when the child witness has memory failure, refuses to answer questions, or is simply too young to articulate what happened. This case is somewhat different because KJ testified and she answered every question posed to her. She was articulate. She was not crying. She did not seem distracted or hesitant to answer questions.
>
> On the other hand, she provided far less detail in her testimony, compared to her statements to Sergeant [IM] and Agent [S]. KJ testified to three specific instances of the abuse where the accused rubbed her buttocks on two occasions and licked her

vagina on one occasion. When asked by trial counsel if she remembered if the accused touched her breasts or lower torso or anus, she said no.

When asked by defense counsel if these were the only instances of abuse, referring to the three she testified to, she said yes. However, over 18 months ago, in January 2014, closer in time to the alleged abuse, KJ told Sergeant [IM] the abuse happened about five times. She told Agent [S] the abuse occurred four or five times, and included licking her vagina, touching her buttocks, touching her breasts, touching her anus, touching her lower torso, and inserting her finger -- his finger -- into her anus.

KJ testified that when she was interviewed by the police a long time ago, she understood at that time it was important to tell the truth and she told the truth. Therefore, it is reasonable to conclude that KJ does not remember today what she remembered then. And what she remembered then was closer in time to the last instance of alleged abuse.

We further note the military judge's findings of fact on the motion for remote live testimony as they bear on the necessity prong. In summarizing aspects of KJ's mental health records, the military judge found:

The records show that KJ's mental health has substantially declined since she came forward with these allegations. She struggles daily to cope with her anxiety and to manage her thoughts and feelings. She's fearful, has outbursts, and sleep issues. She avoids discussing the sexual trauma and when she does discuss it, Mrs. B reports seeing regressive behavior; such as talking in a child-like voice. Some of her mental health records suggest she is ready to testify or will do fine testifying; however, her records consistently show that she is reluctant to discuss the details of the alleged abuse.

Considering the entire record, we find the military judge did not abuse her considerable discretion in finding the necessity prong was satisfied. This prong may be satisfied when a witness cannot remember or refuses to testify about a material fact and there is no other more probative evidence of that fact. *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003). The military judge's assessment of KJ's lack of memory was reasonable in that she considered KJ's various statements, her age, and her demeanor, as well as the differences in detail regarding KJ's reports of abuse in relation to the timing of her disclosures. *See Czachorowski*, 66 M.J. at 436 (finding military judge failed to make reasonable efforts in determining whether hearsay evidence was necessary).

The record also supports there was a mental health component to KJ's ability to testify and lack of memory.

While trial defense counsel's cross-examination raised the question of whether KJ's more limited testimony at trial was due to lack of memory or instead was akin to recantation, we do not believe this discrepancy should necessarily change a military judge's calculation as to the "best evidence" of the abuse for the factfinder's consideration. *See United States v. Haner*, 49 M.J. 72, 78 (C.A.A.F. 1998) (finding a written statement made by a witness who recanted at trial to be "necessary" under a residual hearsay analysis). There were sufficient facts before the military judge that KJ's testimony at trial did not encompass all of the material facts regarding Appellant's abuse. For these reasons, and in consideration of the more liberal application of necessity for statements by child victims, we find the military judge's factual findings and conclusions were not arbitrary, clearly unreasonable, or clearly erroneous.

In order to be admitted under the residual hearsay exception, the hearsay statement must also be reliable; that is, the statement must possess circumstantial guarantees of trustworthiness. *Donaldson*, 58 M.J. at 488; *United States v. Giambra*, 33 M.J. 331, 334 (C.M.A. 1991). In determining whether a statement has the circumstantial guarantees of trustworthiness, courts may look to a number of indicia of reliability. These indicia can include, but are not limited to: the mental state of the declarant, the spontaneity of the statement, the use of suggestive questioning, whether the statement can be corroborated, the declarant's age, and the circumstances under which the statement was made. *Donaldson*, 58 M.J. at 488. For child declarants, the indicia can also include the use of terminology unexpected of a child of a similar age and the lack of a motive to fabricate. *Idaho v. Wright*, 497 U.S. 805, 821–22 (1990); *see also United States v. Lingle*, 27 M.J. 704, 708 (A.F.C.M.R. 1988) (noting a declarant's young age is a positive factor supporting admissibility as it lessens the degree of skepticism regarding the child's motives). A military judge's factual findings on the existence of circumstantial guarantees of trustworthiness are reviewed for clear error. *Donaldson*, 58 M.J. at 488.

When examining whether the two statements admitted under Mil. R. Evid. 807 had requisite guarantees of trustworthiness for admission, the military judge looked at both statements admitted at trial individually. As to the forensic interview, the military judge found that: (1) KJ affirmatively understood the difference between the truth and a lie; (2) the statement was sufficiently detailed and unambiguous; (3) the statement was made close in time to the last incident of abuse; (4) the questioning by the AFOSI interviewer was not inappropriately suggestive and allowed KJ to use her own words in describing Appellant's misconduct; (5) the statement suggested an advanced knowledge of inappropriate sexual behavior given KJ's young age; (6) the statement was

made with a serious tone and demeanor; (7) the statement was unrecanted and consistent with other statements; (8) the statement was not improperly influenced by others; and (9) the statement was internally consistent and not self-contradictory. In addition to these factors, the military judge also noted KJ's "outcry" statement was unsolicited and not offered in response to questioning.

In his briefings before the court, Appellant does contest the military judge's ruling on reliability. Having reviewed the evidence before the military judge, we find her factual findings and legal analysis on this question was not clear error. The military judge cogently assessed KJ's age, her demeanor, and her motive, as well as the circumstances surrounding the making of her various statements—all factors commonly evaluated when examining the reliability of a hearsay statement.

As such, the military judge did not abuse her considerable discretion in admitting KJ's statements as residual hearsay under Mil. R. Evid. 807. The military judge evaluated the evidence, balanced the probative value of the statements, and properly determined that KJ's statements were material, necessary, and reliable. Accordingly, the statements met the requirements of admissibility as residual hearsay, and we uphold the military judge's decision to admit them.

**B. Discovery Violation**

Subsequent to the referral of charges against Appellant, the Government requested the El Paso County DHS release all records related to KJ's assessment and treatment as part of the child protective service case. After DHS representatives contested the subpoena, the military judge issued a court order directing the production of the records.

Prior to trial, the Defense filed a motion requesting the Government disclose KJ's mental health records. The records were requested to allow the Defense to "fully cross examine KJ and explore possible psychological issues that could affect the memory, perception, credibility, and/or motivation of the witness." The Defense's request encompassed the DHS records previously ordered produced by the military judge.

In response to a motion by DHS legal counsel to quash both the Government's subpoena and the military judge's court order, the military judge conducted a hearing on the matter. When the military judge asked the Defense what they were seeking in the DHS records, trial defense counsel responded they were looking for impeachment, other avenues of defense, evidence of impairment, and evidence regarding the reliability of the victim, including her ability to perceive, testify, and recall facts.

The military judge determined she would conduct an in camera review of the DHS records. This review was not contested by the Government or KJ's

appointed legal representative. After conducting her in camera review, the military judge released a variety of mental health records for care provided to KJ while she was under the jurisdiction of DHS. Additionally, the military judge released 77 pages of general information contained in the DHS investigative case file. However, she declined to release an additional 734 pages from the DHS investigation.

On appeal, Appellant argues the military judge erred in withholding seven additional pages from the DHS investigation. These pages document e-mail conversations between AFOSI agents and a DHS investigator, in which the investigator opined the forensic interview conducted by AFOSI was not a "good interview" because the interviewing agent used leading questions and did not follow up the victim's statements. While the investigator advised he had consulted with forensic experts about the quality of the interview, he acknowledged additional discussions with the victim's therapist and other professionals was required before a second interview of the victim would be considered in this case. Appellant now argues these records were discoverable as they would have allowed the Defense to attack the military judge's ruling that KJ's pretrial statements were reliable and, therefore, admissible under Mil. R. Evid. 807. Without determining whether there has been an actual discovery violation, we find the failure to disclose the limited DHS records did not affect the outcome of this trial.

In its answer to this assignment of error, the Government moved to attach an e-mail record from senior trial counsel in which, prior to trial, he provided the Defense with draft internal data pages from AFOSI. One of the attachments to the e-mail disclosed a summary of AFOSI's interaction with the DHS investigator, including information that child protective service personnel and multiple forensic experts had reviewed the initial AFOSI child forensic interview and opined a second interview would be necessary due to the fact the interviewer improperly led the victim and failed to follow up on the victim's responses. We granted the Government's motion to attach these materials to the record of proceedings, and have considered them in resolving this assignment of error.

We review a military judge's ruling on a discovery request for abuse of discretion. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *Id.* In the case before us, we are reviewing the military judge's determination of whether this requested evidence was "material to the preparation of the defense" for purposes of the Government's obligation to disclose under Rule for Courts-Martial (R.C.M.) 701(a)(2)(A). "The military judge's determination of materiality in this respect is a question of law that we review de

novo." *Roberts*, 59 M.J. at 323. "Our review of discovery/disclosure issues utilizes a two-step analysis: first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *Id.* at 325.

However, a reviewing court may resolve discovery matters without determining whether there has been an actual discovery violation if the court concludes that the alleged error would not have been prejudicial. *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004). If the withheld evidence was not specifically requested by the defense, the "harmless error" standard is applied— whether there is a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Coleman*, 72 M.J. 184, 186–87 (C.A.A.F. 2013) (quoting *Smith v. Cain*, 56 U.S. 73, 75 (2012)).

In contrast, a constitutional error standard is applied in military cases when the defense made a specific request for the undisclosed information. *Id.* at 187. This heightened standard is unique to military practice and reflects the broad nature of discovery rights granted to a military accused under Article 46, UCMJ, 10 U.S.C. § 846, and its implementing rules, which provide the accused with greater statutory discovery rights than does one's constitutional right to due process. *Id.* at 186–87; *Roberts*, 59 M.J. at 327.

Here, given the specific facts before us, it is only necessary for us to revolve whether the military judge erred in failing to provide the additional seven pages of the records to the Defense if we find that the error prejudiced Appellant. In so doing, we review the military judge's failure to provide these seven pages of discovery using the "harmless beyond a reasonable doubt" standard. This standard entitles an appellant to relief if the disclosure of the favorable evidence "might have affected the outcome of the trial." *Coleman*, 72 M.J. at 187. "Harmless beyond a reasonable doubt is a high standard, but it is not an impossible standard for the Government to meet." *United States v. Gonzalez*, 62 M.J. 303, 306 (C.A.A.F. 2006). Our determination of prejudice is made in light of the entire record. *United States v. Morris*, 52 M.J. 193, 197 (C.A.A.F. 1999).

We find the failure to disclose the limited DHS records did not affect the outcome of this trial. Based on the Government's pretrial discovery, trial defense counsel was already in possession of information documenting DHS's

concerns about the quality of AFOSI's forensic interview of KJ.[6] As such, the seven pages of records withheld by the military judge were cumulative with other discovery available to the Defense.

Additionally, trial defense counsel was unquestionably aware that DHS was considering a second interview of KJ during the course of its investigation. Relevant information about DHS's proposed plan was included in the Government's response to the Defense's motion seeking DHS records. Trial defense counsel's knowledge was also reflected in his cross-examination of KJ's therapist, as well as statements of fact made in the Defense's opening statement, which was given after the Government's rested its case-in-chief. Trial defense counsel was also fully aware, based on the same government discovery, that DHS personnel eventually decided against a second interview based on a belief they had sufficient information to satisfy their burden of proof against Appellant. Given the Defense had access to an experienced forensic psychologist as a litigation consultant who could also have evaluated the quality of KJ's interview by AFOSI, we find the omission of this limited evidence harmless beyond a reasonable doubt.

We are also convinced beyond a reasonable doubt that trial defense counsel's specific citation to this material would not have changed the military judge's ruling under Mil. R. Evid. 807. The military judge reviewed the video herself and, as such, was sufficiently able to analyze critical issues such as suggestiveness, reliability, bias, and timing. The military judge found the questions posed to KJ were not inappropriately suggestive and the AFOSI agent allowed KJ to use her own words in describing the abuse. Having viewed the interview video ourselves, we cannot fault the military judge for her overall assessment regarding the quality of the forensic interview.

Furthermore, it is doubtful the military judge would have given much weight to the DHS investigator's initial opinion given the ultimate decision by DHS to move forward with their case without another interview. While DHS's decision to move forward may have been made in spite of what they still believed was poor interview, there is no evidence before this court in direct conflict with the military judge's holding on this matter. For these reasons, we find the nondisclosure in this case to be harmless beyond a reasonable doubt. We are convinced the challenged evidence, if disclosed to both trial defense counsel and the military judge, would not have affected the outcome of the trial.

---

[6] The Defense was also notified that the AFOSI agents and DHS investigator involved in the now-challenged e-mail communication were potential Government witnesses at trial. There is no evidence before us that trial defense counsel was unable to conduct a pretrial interview of these witnesses.

**C. Admission of Propensity Evidence**

Prior to trial, the Government notified the Defense of its intent to offer various sexual acts committed by Appellant as propensity evidence under Mil. R. Evid. 414. Most of the sexual acts identified by the Government were offenses involving KJ which were charged under Article 120b, UCMJ. However, the Government also gave notice of sexual misconduct committed against KJ's younger sister which had been initially charged, but dismissed by the Government prior to trial. The Defense submitted a motion for appropriate relief based on this notice requesting the military judge prevent the Government from offering any propensity evidence.

After conducting a hearing on the Defense motion, the military judge, recognizing the status of the law at that time, held the charged offenses involving KJ could be considered as propensity evidence. The military judge initially deferred her decision on the propriety of admitting evidence involving KJ's sister as propensity until after KJ testified at trial. Eventually, however, the military judge found the uncharged misconduct involving KJ's sister was not proper evidence for the military judge to consider under Mil. R. Evid. 414.

Based on the military judge's consideration of charged offenses for purposes of propensity evidence, Appellant claims his convictions must be set aside based on our superior court's ruling in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). There, the court determined the military judge erred in admitting charged sexual assault offenses as propensity evidence. *Id.* at 352. Additionally, the court ruled the military judge's spill-over and propensity instructions were improper as the court members were provided with "directly contradictory statements about the bearing that one charged offense could have on another." *Id.* at 357. In so finding, the court noted it could not determine if "Appellant's right to a presumption of innocence and to be convicted only by proof beyond a reasonable doubt was not seriously muddled and compromised by the instructions as a whole." *Id.* The court then examined the prejudicial effect of the error under the standard of harmless beyond a reasonable doubt given the instructional error raised constitutional due process concerns.

The Government, in its brief, argues Appellant's case is distinguishable from the holding in *Hills*.[7] In particular, the Government suggests *Hills* does

[7] The Government also argues Appellant either waived or forfeited his objection on the use of propensity evidence by acquiescing to the military judge's statement during motion practice that the use of charged offenses as propensity evidence was "common" and "permissible" in military practice. We do not find Appellant's recognition of the then-current state of the law regarding propensity evidence was sufficient to eviscerate his clear objection at trial regarding the use of charged offenses as propensity evidence.

not answer the question of whether Mil. R. Evid. 413 and 414 apply in circumstances such as those found in Appellant's case where the victim was sexually abused in different ways on multiple occasions. While our superior court specifically recognized that the purpose of evidentiary rules allowing propensity is to address recidivism and, therefore, permits the bolstering of a victim's credibility through the use of evidence from other victims of an accused's sexual misconduct, it does not appear to us the ultimate holding in *Hills* would have been different had the charged crimes involved different offenses or offense dates as found here. We, therefore, decline the Government's invitation to limit *Hills* to its facts.

Regarding the assessment of prejudice, Appellant argues the military judge's error must be examined under the more stringent standard of harmless beyond a reasonable doubt. Appellant opines the military judge remains beholden to the same instructions found deficient in *Hills* when rendering her findings in this case.

We disagree, and instead apply Article 59(a), UCMJ, 10 U.S.C. § 859(a), when examining cases in which a military judge sitting alone considers charged offenses as propensity evidence. In so holding, we note military judges are presumed to know the law and to follow it, absent clear evidence to the contrary. *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997). This presumption includes the ability to maintain the presumption of innocence and apply the appropriate burden of proof in assessing Appellant's guilt—issues "seriously muddled and compromised" by the instructions provided to court members in *Hills*, 75 M.J. at 357. While we recognize the military judge did err in considering the charged offenses for propensity, we cannot extend this error to also encompass the constitutional concerns raised in *Hills* absent evidence in the record of trial. Here, we have no reason to believe the military judge misapplied either the presumption of innocence or the burden of proof in assessing Appellant's guilt. *See United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 1997).

With the instruction concerns present in *Hills* removed, any error by the military judge in admitting propensity evidence is nonconstitutional in nature. *See United States v. Solomon*, 72 M.J. 176, 182 (C.A.A.F. 2013). As such, we are bound to uphold the findings in this case unless the error materially prejudices Appellant's substantial rights.

Regardless, in this particular case, we find the military judge's admission of propensity evidence to be harmless under even a constitutional due process

We decline to accept the Government's invitation to apply either waiver or forfeiture to the facts of this particular case.

analysis. Regarding the strength of the Government's case, the victim testified under oath and was subject to the crucible of cross-examination. KJ's testimony, when examined in conjunction with her pretrial statements admitted under the medical treatment and residual exceptions to the hearsay rule, was fairly consistent with regard to Appellant's misconduct towards her, including the timeframe, location, and manner of the sexual assault. Furthermore, her credibility was bolstered by her relatively contemporaneous report and established character for truthfulness.

Our belief about the strength of the Government's case is buttressed by the military judge's mixed findings. Had the military judge misinterpreted the presumption of innocence or burden of proof as suggested as a possibility in *Hills*, one would have expected guilty verdicts on all of the charged sexual assault offenses. Instead, the military judge's mixed findings and findings by exception and substitution support a conclusion she examined each specification separately and imposed not guilty findings where the Government failed to meet its burden of proof.

For all of these reasons, we find any errors surrounding the admission of propensity evidence in this case to be harmless beyond a reasonable doubt.

## D. Factual Sufficiency

Appellant argues the evidence produced at trial was factually insufficient to support three of the sexual abuse specifications asserting Appellant touched KJ's anus, breast, and vaginal area with his hand. These specifications, Appellant notes, were only supported by evidence admitted as residual hearsay. Provided this court finds the military judge erred in admitting evidence under Mil. R. Evid. 807, Appellant reasons the three specifications supported by this evidence must be dismissed. Alternatively, Appellant argues KJ's complete testimony with regard to these offenses was insufficient to establish proof beyond a reasonable doubt. Appellant focuses on KJ's testimony at trial in which she denied the misconduct charged in these specifications occurred.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence con-

stitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

Given our finding above that the military judge did not abuse her discretion in admitting KJ's forensic interview, we assess Appellant's claim by examining all of the evidence admitted at trial. KJ's forensic interview provided more than sufficient evidence for the elements of the offenses charged in the three specifications challenged by Appellant. The interview was made close in time to the abuse and, more importantly, made prior to attempts by KJ's mother to either dissuade KJ from testifying or otherwise improperly influence her testimony.

Regarding KJ's credibility, the Government called various witnesses, including KJ's teachers, who all opined her character for truthfulness was favorable. Moreover, her credibility was aided by her relatively contemporaneous report and the absence of tangible evidence showing KJ possessed a motive to misrepresent the allegations against Appellant.

Furthermore, KJ's timeline of the abuse was corroborated by other evidence. As an example, KJ advised in her forensic interview that she told her mother, MB, about the abuse in December 2013, a few weeks prior to disclosing to SSgt IM. KJ stated the abuse stopped after she reported Appellant's misconduct to her mother. Although MB denied the statement at trial, SSgt IM relayed MB's request for a lock to place on KJ's door because of her concern about Appellant's conduct one evening when he came home intoxicated. This request, according to SSgt IM, took place a few weeks prior to KJ's outcry. While MB tried to minimize the importance of the lock, her prior statement to SSgt IM bolstered KJ's testimony and her overall credibility with the factfinder.

The military judge heard the testimony of KJ and other witnesses, and was able to consider the other admitted evidence surrounding Appellant's charged misconduct. Having carefully reviewed the record of proceedings in this case, and having made allowances for not personally observing the witnesses, we are convinced beyond a reasonable doubt that Appellant sexually abused KJ as alleged in the three specifications challenged on appeal. We thus find these offenses factually sufficient.

## III. Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.

Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[8] Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist

---

[8] The court specified an issue as to whether error occurred when the addendum to the staff judge advocate's recommendation contained a victim-impact statement, but there was no evidence in the record of trial that this statement was served on Appellant prior to the convening authority taking action. Appellant conceded in his response to the specified issue that he suffered no prejudice for the Government's error. As such, no corrective action is necessary on this matter.